TOBEY FURNITURE Co. *v.* COLBY and others.

*(Circuit Court, N. D. Illinois.* November 16, 1885.)

1. PATENTS FOR INVENTIONS—COMBINATION CLAIM—INFRINGEMENT.
   A claim for a combination of three elements is not infringed by the use of only two of them, where the omitted element has a function of its own not performed by the elements used in the device claimed to infringe.

2. SAME—EQUIVALENTS.
   An inventor who is only an improver, and not the first in the art, is not entitled to invoke broadly the doctrine of mechanical equivalents, so as to cover devices not specifically claimed.

3. SAME—WARDROBE BEDSTEADS.
   The patent to Blackmore and Green, assignees of Hand and Caulier, No. 204,321, of May 28, 1878, for wardrobe bedsteads, construed, and *held* not infringed by a bedstead made under the patent to Robert F. Meissner, No. 270,327, of January 9, 1883.

In Equity.

*Coburn & Thacher,* for complainant.

*Banning & Banning* and *Hutchinson & Partridge,* for defendants.

BLODGETT, J. This is a bill charging defendants with infringement of patent No. 204,321, issued May 28, 1878, to H. P. Blackmore and C. S. Green, assignees of C. Hand and Frederick Caulier, for an improvement in wardrobe bedsteads. The two chief features of the patent are an arrangement of folding doors which give the bedstead the appearance of a wardrobe when the bed is raised to an upright position and these doors are closed around it; and when the bed is let

down for use these doors fold back so as to form a paneled head-board, giving the whole structure the appearance of a canopied bedstead; while the other feature consists in an arrangement of vertical spiral springs which aid in raising the bed from a horizontal to a vertical position. These features are covered by the two claims of the patent, which are: (1) In a wardrobe bedstead the hinged folding sections, A, B, C, secured to the uprights, D, substantially as and for the purpose described. (2) The combination of body, E, rods or mandrels, F, having coiled springs, $f$, and links, G, substantially as shown and described.

Defendants' bedstead, which, it is claimed, infringes this patent, has folding doors which inclose the upper part of the bedstead when raised, and give it a wardrobe appearance, and which fold back to give the effect of a paneled head-board when the bed is down. In these respects the defendants' device accomplishes substantially the same result as complainant's; but the defendants use only two folding doors or hinged boards, while complainant uses, describes, and specifically claims three doors. As already said, defendants' two doors produce substantially the same general effect and result as the three used and described by complainant; but a study of the specifications of complainant's patent shows that for the purpose of producing the result aimed at by his device three doors were necessary; and it cannot, it seems to me, be accomplished by two doors. At all events, defendants do not use three to accomplish the purpose of their device.

One object of complainant's patent was to give the side supports of the upright frame a heavy, massive appearance; and this is done by the peculiar way in which the three doors are folded around the side supports. The patentee says:

"Our invention has for its primary object to provide a folding or wardrobe bedstead in which the head-board will form or serve as the bottom board of the bed or front of the wardrobe, and in which solid posts are simulated by means of hinged boards, thus materially reducing the expense of construction."

Inasmuch, therefore, as the inventors of complainant's device seem to have had a special purpose in the use of three hinged doors, or sections,—that is, to give the vertical standards or sides of the upright frame a solid, massive appearance when these sections were folded around the upright, D,—and, inasmuch as these three sections for the purpose described are specifically claimed, I am of opinion that the defendants' use of two folding sections, which accomplish part of, but not the entire purpose of, complainant's three sections, is not an infringement of this patent. Another evident reason for the use of the three folding sections in complainant's device was to form a casing or box for the concealment of the vertical springs which are used to help lift the bed to an upright position, a purpose not needed in the defendants' structure, as their springs are concealed in another way.

The second claim is for the vertical springs by which to aid in lifting the bed. Defendants use a spring seated in the lower part of the upright frame, and which, by means of a cord passing over an eccentric, utilizes the spring to aid in lifting the bed. If the inventors of complainant's device had been the first in the art to show the use of a spring to aid in lifting a turn-up or folding bedstead to a vertical position, and therefore entitled to invoke the doctrine of equivalents, I should deem the device used by defendants an infringement, as it is clearly an equivalent for that covered by complainant's claim; but the proof shows several prior patents for folding bedsteads in which an auxiliary lifting device is shown, and especially that shown in the patent to Maine, in 1869, is almost exactly reproduced in defendants' bedstead. I must, therefore, find that defendants do not infringe either claim of complainant's patent.

That defendants' bedstead is so much like that of complainant's as to be a dangerous, if not a successful competitor, is undoubtedly true; but I think this a clear case of an evasion, and not of the infringement, of a patent.